# THE VIRGINIA REGISTER
## OF REGULATIONS



VOLUME TEN • ISSUE TWENTY-FOUR

# August 22, 1994
# 1994

Pages 5787 Through 5968

EXHIBIT 23

# GOVERNOR

## EXECUTIVE MEMORANDUM 8-94

### PURCHASE OF RECYCLED GOODS

Purpose:

This memorandum sets forth statewide policy to increase the use of recycled goods and to implement a purchase program to stimulate the market for recycled goods.

Applicability:

This memorandum applies to all executive branch agencies, institutions, and employees.

Effective Date:

July 1, 1994

General Policy:

Recycling is one of three elements of the Commonwealth's conservation policy. State employees should first seek to reduce the need for purchased goods by eliminating waste. Second, state agencies, institutions, and employees should reuse goods and supplies whenever possible. For example, supplies such as paper clips and file folders can be reused again and again, resulting in cumulative savings. After reduction and reuse, the emphasis must be on recycling.

The Commonwealth seeks to promote the efficient use of our natural resources by promoting the use of recycled goods. By purchasing recycled goods whenever economically feasible, agencies of the Commonwealth will demonstrate a commitment toward effective recycling practices in Virginia.

Requirements:

By virtue of the authority vested in me under the Constitution of Virginia and under the laws of the Commonwealth, including but not limited to Section 2.1-41.1 of the Code of Virginia, I hereby direct all state agencies participating in the Virginia Recycling Markets Development Council, and all other state agencies and institutions, to carry out their legally established duties in a manner consistent with the policies set forth in this memorandum as well as those set out in Sections 9-145.47, 10.1-1425.6, 10.1-1425.7, 10.1-1425.8, 11-41.01, 11-47, 11-47.2, and 11-47.01 of the Code of Virginia.

I. Responsibility of the Department of Environmental Quality:

With advice from the Virginia Recycling Markets Development Council, the Department of Environmental Quality (DEQ) shall prepare a definition for recycled products, and advise the Department of General Services concerning the designation of these products. DEQ shall endeavor, in cooperation with the Department of General Services, to heighten state agency awareness of the benefits of using recycled products.

II. Responsibilities of the Department of General Services:

The Department of General Services shall:

A. Ensure the Commonwealth's procurement guidelines for state agencies promote the use of recycled products;

B. Promote the Commonwealth's interest in the use of recycled products to vendors; and

C. Make agencies aware of the availability of recycled products, including those which use post-consumer and other recovered material processed by Virginia-based companies.

III. Responsibilities of All State Agencies:

To the greatest extent possible, all state agencies shall adhere to the procurement program guidelines for recycled products to be established by the Department of General Services.

This Executive Memorandum rescinds Executive Memorandum 6-93, issued by Governor Lawrence Douglas Wilder on December 16, 1993.

This Executive Memorandum shall remain in full force and effect unless amended or rescinded by further executive action.

/s/ George Allen
Governor

VA.R. Doc. No. R94-1146; Filed July 26, 1994, 4:23 p.m.

## EXECUTIVE MEMORANDUM 10-94

### EXECUTION VIEWING BY VICTIM'S FAMILY MEMBERS

Purpose:

This memorandum establishes a policy that close family members of the victim of a capital murder should, whenever feasible, be afforded the opportunity to witness the execution of the person who murdered their loved one. This policy is adopted with the recognition that witnessing such an execution may have unforeseen consequences and impact for the family members involved, and thus is neither to be encouraged or discouraged. This memorandum establishes the procedures and conditions under which close family members may witness the

# Governor

execution of the murderer of their family member.

Definitions:

For purposes of this Executive Memorandum, the term "family member" shall be deemed to include the following relatives of the victim:

1. Spouse at the time of the murder;

2. Mother or father, whether by birth, adoption or marriage;

3. Sisters or brothers, full or half;

4. Children, whether by birth, adoption or marriage;

5. Guardian or person standing in loco parentis;

6. Any other relatives chosen by any of the above-listed family members.

Applicability:

This memorandum supersedes any existing policies on this subject, written or verbal, that may have been created by any executive branch agency or official.

Effective Date: July 1, 1994

Procedures and Conditions for Viewing Executions:

Because of limited space and facilities and in consideration of other factors, the following procedures and conditions shall be observed by the Department of Corrections (hereinafter the "Department") in implementing the policy contained herein:

1. No person under the age of eighteen (18) years of age shall be allowed to witness an execution.

2. The Department shall ensure that family members are physically separated from other witnesses and that there is no opportunity for verbal or visual contact between family members and the individual being executed or other witnesses.

3. Taking into consideration available space and facilities, the Department shall determine a maximum number of family members who will be allowed to witness an execution.

4. In the case of an execution of a murderer of multiple victims, the Department shall allocate as equally as practicable the spaces available to the family members of each victim for which a trial resulted in a conviction of capital murder.

5. The Department shall require each family member to sign an appropriate release of liability on the part of the Commonwealth prior to witnessing the execution.

6. The Department shall establish a requirement for a written application to witness the execution to be submitted to the Department by the family members in sufficient time for the Department to act upon the application.

7. In a case in which more family members apply than the facilities can accommodate, the family members shall decide among themselves who will witness the execution. The Secretary of Public Safety shall have discretion to deny permission to all family members in the event they are unable to decide who will witness the execution.

8. At all times, the Department shall reserve the right to remove immediately any family member who becomes disruptive of the proceedings.

This Executive Memorandum shall remain in full force and effect unless superseded or rescinded by further executive action.

/s/ George Allen
Governor

VA.R. Doc. No. R94-1147; Filed July 26, 1994, 4:25 p.m.

EXECUTIVE ORDER NUMBER FIVE (94) (REVISED)

CREATING THE COMMISSION ON PAROLE ABOLITION AND SENTENCING REFORM

By virtue of the authority vested in me as Governor under Article V of the Constitution of Virginia and, including, but not limited to Section 2.1-51.36 of the Code of Virginia, and subject to my continuing and ultimate authority and responsibility to act in such matters, I hereby create the Commission on Parole Abolition and Sentencing Reform.

The Commission is classified as a gubernatorial advisory commission in accordance with Sections 2.1-51.35 and 9-6.25 of the Code of Virginia.

The Commission shall have the responsibility to advise the Governor on all matters related to the abolition of parole and the adoption and implementation of a truth-in-sentencing system for the Commonwealth of Virginia. The Commission's specific responsibilities shall be:

1. To examine relevant data regarding sentencing systems, including truth-in-sentencing, sentencing guidelines, and similar systems in other states and at the federal level, for the purpose of recommending to the Governor an effective and workable plan for abolishing parole and instituting truth-in-sentencing in Virginia;